In the Matter of the Claim of DELVINA MOQUIN, Respondent, against THE GLENS FALLS HOTEL CORPORATION, Self-Insurer, Appellant.

STATE INDUSTRIAL BOARD, Respondent.

Third Department, June 27, 1935.

*Clarence B. Tippett,* for the appellant.

*John J. Bennett, Jr., Attorney-General* [*Joseph A. McLaughlin* and *Roy Wiedersum, Assistant Attorneys-General,* of counsel], for the respondents.

CRAPSER, J. The accident, death and employment are admitted. The sole question is as to the fixation of the compensation rate in the disability case at $12.31 per week; and the rate of $5.538 per week, established by the Board in the death claim.

The Industrial Board found that " Joseph E. Moquin worked for the employer herein one or two days each week or 58 days during the year immediately preceding his injury, and his earnings during said period were the sum of $76.10 plus one meal, valued at 33¢ and 75¢ in tips each day he worked. The actual earnings of Joseph E. Moquin during the year immediately preceding his

injury do not reasonably or fairly represent his annual earning capacity. Having regard to the previous earnings of said Joseph E. Moquin and of other employees of the same or most similar class working in the same or most similar employment, in the same locality, the average annual earnings of Joseph E. Moquin are fixed at $959.92 which said sum reasonably represents his annual earning capacity in the employment in which he was working at the time of the accident, and his average weekly wage, therefore, is fixed at the sum of $18.46."

A wage scale of the deceased was filed and made a part of the record. It shows that during the year prior to his accident he worked during fifty-eight days and received $76.10. During thirty weeks he worked one day each week, for eleven weeks he worked two days each week and for two weeks he worked three days each week. His actual earnings were $76.10 to which should be added an allowance of one meal valued at thirty-three cents and seventy-five cents tips each day he worked. The meals would amount to $19.14 and the tips to $43.50. In all it would total for the year $138.74.

The deceased had had a kidney removed twelve years before. The deceased worked steadily until about 1928.

Walter H. Moquin, a son of the deceased, was also employed at the hotel as a waiter and worked there regularly for the past eight years. He testified that the reason his father did not work more was that he was not feeling well; that he worked after the hotel opened in 1926 for about two years regularly; that he " started getting this sickness back."

The manager of the hotel testified that deceased worked one day a week and sometimes more; that the deceased had been sick for a number of years; he was not a regular employee.

Dr. Depan, the family physician for ten years, was asked if the deceased was able to work regularly during the year prior to his injury and answered, " So far as I know, I think he was, during that previous year." He testified further that he had not seen him during that year professionally but had simply met him on the street and asked after his health and when he was cross-examined as to how he knew that the deceased was able to work he answered, " I don't know he was able to work — only I saw him on the street." He testified that he thought that the deceased would have been able to work and on cross-examination the doctor testified: " Q. So that you don't know anything about his condition if you didn't see him professionally? A. Professionally, no. Q. So that when you say that the man was able to do his work regularly, you are stating that which you don't know anything about—just assuming it?

A. Just assuming it." "Q. Did you see him, doctor, professionally during the year prior to his accident? A. Now I cannot recall I saw him during the year * * * I don't believe I did. * * * Q. You knew, doctor, that this man was sick for a number of years? A. Yes, I took care of him. Q. You knew his condition? A. Yes. Q. You knew he was in a serious condition? A. He was serious at the times he got ill. Q. He was ill quite frequently? A. Yes. Q. He was pretty close to death's door? A. At one time. Q. So that when the man told you, in answer to a question, that he was feeling fine, wasn't that a comparative statement? A. It was."

The referee examined Walter H. Moquin, the son of the deceased, who was a waiter working steadily at the hotel, as to his earnings. He received $35 a month and his meals and the referee assumed that his salary and meals would be about $50 a month and that his tips would amount to $37.50 a month and he fixed the average annual earnings of Joseph E. Moquin at $959.92, which sum the Industrial Board found represented his annual earning capacity in the employment in which he was working at the time of the accident, and his average weekly wage was fixed at the sum of $18.46.

There was no finding made that the deceased was able to work regularly, and the evidence in the case was to the effect that since 1928 he had not been able to work regularly due to sickness.

There is no basis in the record for the award; the statute was not adopted to create a source of profit for an injured employee.

The Board herein fixing compensation both for disability and for death benefits have sought to apply subdivision 3 of section 14 of the Workmen's Compensation Law and have decided that the average weekly wage of an employee of the same class working in a similar employment was $18.46 per week and computed death benefits accordingly.

Loss or diminution of wage-earning ability is the foundation upon which compensation award and death benefits are computed. " Annual average earnings shall be such sum as, having regard to the previous earnings of the injured employee and of other employees of the same or most similar class, working in the same or most similar employment, or other employment as defined in this chapter, in the same or neighboring locality, shall reasonably represent the annual earning capacity of the injured employee in the employment in which he was working at the time of the accident." (Workmen's Comp. Law, § 14, subd. 3.)

The deceased did not belong to the class of employees who had been working full time and the wages received by them did not reasonably represent his annual earning capacity. The premium

paid to the insurance carrier is computed upon the actual payroll. Compensation should not be fixed upon a fictitious one. Actuality should control. (*Matter of Barlog* v. *Board of Water Comrs., Dunkirk,* 239 App. Div. 225; *Matter of Ruppert* v. *Plattdeutsche V. Verein,* 263 N. Y. 338.)

The award should be based upon the actual earnings of the deceased for the actual number of days he worked during the year immediately preceding his injury. The total of his actual earnings for the year divided by fifty-two would furnish the weekly wage upon which the award should be computed. (*Matter of Remmert* v. *Weidenmeyer,* 237 App. Div. 147.)

The award should be reversed, with costs against the State Industrial Board, and the claim remitted to the State Industrial Board for the purpose of computing the compensation in accordance with this opinion.

RHODES, MCNAMEE and HEFFERNAN, JJ., concur; HILL, P. J., concurs for reversal on the ground that the standard of wages used was not that of an employee in the same class.

Award reversed and claim remitted, with costs against the State Industrial Board, for the purpose of computing the compensation in accordance with opinion.