■ In the Matter of the Claim of WILLIAM BEACH, Respondent, v. LAUNDER NEEDS Co. et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.— GIBSON, P. J. An employer and its insurance carrier appeal

from a decision and award of the Workmen's Compensation Board, the sole issue presented being as to the determination of the average weekly wage upon which the award was computed. At the time of the accident claimant had been employed for over two years by the Speed Queen Laundry as a manager and serviceman, at a wage of $50 per week. Twenty-five days before the accident he took on an additional job, this with appellant Launder Needs Company as a piece worker at $1.25 per hour. He worked 4 days of the first week and 6 days in the second week and had worked 2 days in the third week when he was injured; his wages aggregating $124.37 for an average of $51.80 per week. The parties stipulated that the wage statement of a similar worker at Launder Needs for the year prior to the accident would show an average weekly wage in this same amount of $51.80. The employments were found to be similar, and the parties question neither that finding nor the corollary that "if an employee has concurrent 'similar' employments, the wage basis is the total of the wages earned in the several employments" (*Matter of Walla* v. *Streigel,* 2 A D 2d 914, mot. for lv. to app. den. 2 N Y 2d 708). Here, the Referee combined the actual average wage of $50 paid by Speed Queen and the stipulated average wage of $51.80 of a similar worker at Launder Needs and then computed the award upon a wage base of $101.80. In affirming, the board panel said only that it "finds that the average weekly wage * * * was properly established by the Referee", the board failing to indicate which of the alternative methods provided under section 14 of the Workmen's Compensation Law, by subdivisions 1, 2 and 3, respectively, was employed. Appellants contend that the board should have applied subdivision 1 relating to an injured employee who "shall have worked in the employment in which he was working at the time of the accident, whether for the same employer or not, during substantially the whole of the year immediately preceding his injury"; and would thereupon have the board determine claimant's "average annual earnings" by combining his actual year's earnings of $2,600 at Speed Queen with his actual earnings of $124.37 for his 25 days at Launder Needs to arrive at a total of $2,724.37 or an average weekly wage of $52.38, as against the $101.80 found. Recourse to subdivision 1 in this case would seem unfair, and the method there prescribed "cannot reasonably and fairly be applied" (subd. 3), or at least the board could so find, as there is no indication that claimant's second job was not permanent (and he did, in fact, return to both jobs) or that the combined wages did not correctly reflect his then and future earning capacity. "Loss or diminution of wage-earning *ability* is the foundation upon which compensation award and death benefits are computed." (*Matter of Moquin* v. *Glens Falls Hotel Corp.,* 245 App. Div. 56, 58; emphasis supplied.) "The entire objective of wage calculation is to arrive at a fair approximation of claimant's probable future earning capacity. His disability reaches into the future, not the past; his loss as a result of injury must be thought of in terms of its impact on probable future earnings, perhaps for the rest of his life." (2 Larson, Workmen's Compensation Law, § 60.11, p. 71.) Continuing, Professor Larson remarks upon "the fallacy of supposing that compensation theory is necessarily satisfied when a mechanical representation of this claimant's own earnings in some arbitrary past period has been used as a wage basis." The fact that, in this case, claimant's additional job, and his augmented earnings, continued for only the 25 days that elapsed before his accident in no way serves to depreciate his demonstrated wage-earning capacity. There is ample authority for giving full effect to recently augmented earnings when the new and better compensated job can be found to have had "some elements of permanency". (*Matter of Meiler* v. *Medical Chambers,* 277 App. Div. 825, 826, mot. for lv. to app. den. 301 N. Y. 815.) Similar treatment was accorded the claimants in *Matter of Price* v. *Bison Roofing & Sheet Metal Corp.*

(260 App. Div. 828, mot. for lv. to app. den. 284 N. Y. 820) and *Matter of Koponen* v. *H. Z. Altberg, Inc.* (244 App. Div. 837), as more fully appears from the respective records on appeal; and, indeed, the wage rate in *Koponen* was computed under subdivision 3 on the basis of a better paid job at which claimant had worked but one day and part of the next, when he was injured. The principle of these decisions seems to us equally applicable to a wage rate increased by reason of an additional job in the same employment though in a different employ. Further, subdivision 1 may be eliminated for the additional reason that it applies only to five and six-day workers, and, insofar as his employment with appellant employer is concerned, and hence in respect of the *joint* employment, claimant was neither. Turning next to subdivision 2, respecting an injured employee who shall not have worked substantially the whole of the year in the employment in which he was injured, it is evident that it is without application here; and neither party contends otherwise. Appellants contend that the board "necessarily", and erroneously, resorted to both subdivisions 1 and 2; to the former in dealing with the actual wages earned at Speed Queen and to the latter in respect of the wage of an employee of the same class at Launder Needs. In its brief, the board asserts that subdivision 3, hereinbefore, referred to, was applied. That subdivision is applicable, by its terms, if either of the methods provided by subdivisions 1 and 2 "cannot reasonably and fairly be applied", in which event the "annual average earnings shall be such sum as, having regard to the previous earnings of the injured employee and of other employees of the same or most similar class * ° ° shall reasonably represent the annual earning capacity of the injured employee in the employment in which he was working at the time of the accident". We agree, for the reasons and upon the authorities hereinbefore discussed, that the board might properly find that neither subdivision 1 nor subdivision 2 could "reasonably and fairly be applied" and that resort to subdivision 3 must be had to determine the sum which would "*reasonably* represent [claimant's] annual *earning capacity*" (emphasis supplied). We cannot agree that an "economic windfall" was, in appellants' words, bestowed upon claimant by giving full effect to his employment at a minimum wage rate in two regular jobs. While it may well be true that the board utilized subdivision 3, there is no clear indication in the decision that it did so. In any event, and if recourse was, in fact, had to subdivision 3, it was a necessary prerequisite that the board *find* that neither subdivision 1 nor subdivision 2 could "reasonably and fairly be applied". (See *Matter of Chromey* v. *Argentieri*, 10 A D 2d 749, 750.) In this case, no such finding is implicit in the decision, as might sometimes be the case; and, of course, such a finding requires an exercise of the board's judgment and cannot be supplied by us. In its absence, intelligent review is not possible and the parties are left to conjecture, as their arguments in this case well illustrate. Decision reversed, with costs to appellants against the Workmen's Compensation Board, and matter remitted for clarification of the decision or other proceedings not inconsistent herewith. Reynolds, Taylor, Aulisi and Hamm, JJ., concur.